UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION



\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | * | CR. 12-30158-RAL |
|  | * |  |
| Plaintiff, | * |  |
|  | * | REPORT AND RECOMMENDATION |
| -vs- | * | CONCERNING MOTION TO |
|  | * | SUPPRESS EVIDENCE AND STATEMENTS |
| PHILLIP LABATTE, a/k/a | * |  |
| Phillip Ryan LaBatte, a/k/a | * |  |
| Philip Thomas, | * |  |
|  | * |  |
| Defendant. | * |  |
|  | * |  |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## SUMMARY

Tribal police traced goods taken during a series of residential burglaries to Phillip LaBatte, a/k/a Phillip Ryan LaBatte, a/k/a Philip Thomas. Police later applied for and obtained a warrant from a tribal judge to search LaBatte's trailer house. Following the search, LaBatte was arrested and then interviewed while in jail. He now seeks to suppress the evidence seized from his home and his custodial statements. Because the search did not violate the Fourth Amendment and LaBatte's statements were not illegally obtained, the Court recommends that his suppression motion be denied.

## FACTUAL BACKGROUND

In December, 2011, a string of homes were burglarized in Eagle Butte, South Dakota.

Through investigation, Russell Leaf, a detective with the Cheyenne River Sioux Tribe Police

Department, suspected that a number of juveniles were involved in the burglaries. At least three of the juveniles admitted taking stolen items to LaBatte's trailer house. Some of the juveniles also indicated that LaBatte gave them money and marijuana in exchange for items from the burglaries.

On March 16, 2012, Leaf applied for a warrant to search LaBatte's residence. The warrant application described the property being sought as "identified stolen items such as laptop computers – flat screen televisions – jewelry – Wii game controllers – Wii games – digital camera and also . . . drugs – narcotics contraband, illegal paraphernalia." The affidavit accompanying the application also provided descriptions of some of the items taken from the burglarized homes.

That same day, a Cheyenne River Sioux Tribal Court judge issued a search warrant for the residence. The warrant spelled out the property to be seized as "flat screen televisions/laptop computers/jewelry/narcotics/Wii game console . . . Wii games/digital camera or illegal drugs or paraphernalia."

Later in the day, Leaf and other tribal officers went to LaBatte's trailer house and executed the search warrant. In addition to narcotics, drug paraphernalia, flat screen TVs and cash, they seized six bins containing cell phones, cameras, laptop computers, iPods, tools, entertainment devices, jewelry, DVDs, books and other items.

On April 23, 2012, Leaf and Northern Plains Safe Trails Drug Task Force Officer Shane Severyn interviewed LaBatte at the tribal jail in Eagle Butte. LaBatte was Mirandized, after which he said he understood his rights and agreed to talk to the officers.

During the interview, LaBatte made statements regarding his use and distribution of narcotics, but denied trading any juveniles marijuana for stolen items brought to his house.

## DISCUSSION

### A. Search Warrant

LaBatte initially claims that the March 16 search warrant for his home was unlawfully issued and executed. As a consequence, he says, all evidence seized by tribal police under the authority of the warrant should be suppressed.

In light of staleness issues[1], those pertaining to the reliability of the juvenile informants[2], certain conclusory allegations[3], the over-seizure of evidence[4] and the manner in which the supporting application was filled out, ascertaining — definitively – whether the search warrant comported with Fourth Amendment strictures is no easy task, given the facts and circumstances present. The Court, however, need not engage in this complicated exercise because there is a simpler and more straight forward way to resolve the

---

[1] *See and compare with United States v. LaMorie,* 100 F.3d 547, 554-55 (8th Cir. 1996); *United States v. Brown Thunder,* CR. 11-30113-RAL, 2012 WL 5844809 at **3-6 & nn. 14-21, 38-39 (D.S.D. Oct. 12, 2012), *report and recommendation adopted,* 2012 WL 5844872 (D.S.D. Nov. 19, 2012); *see generally* 2 Wayne R. LaFave, *Search and Seizure,* §3.7(a) (4th ed. 2004 & 2010-11 Supp.)

[2] *See Illinois v. Gates,* 462 U.S. 213, 230, 238-39 (1983); *United States v. Hallam,* 407 F.3d 942, 945-46 (8th Cir. 2005); *United States v. Carpenter,* 341 F.3d 666, 671 (8th Cir. 2003); *see generally* 2 LaFave, *Search and Seizure,* §3.3(b)-(f).

[3] *See Gates,* 462 U.S. at 239; *United States v. Farlee,* CR. 12-30051-RAL, 2012 WL 6093497 at **5-7 (D.S.D. Dec. 7, 2012).

[4] *See generally* 2 LaFave, *Search and Seizure,* §4.11(c)-(d).

overarching constitutional question: The "good-faith" exception to the warrant requirement.[5]

In *United States v. Leon*[6], the Supreme Court created an exception to the Fourth Amendment Exclusionary Rule.[7] Under this exception, the Rule is not to "be applied to exclude the use of evidence obtained by [ ] officers acting in reasonable reliance on a detached and neutral [ ] judge's determination of probable cause and the issuance of a search warrant that is ultimately found to be invalid."[8]

The rationale behind the exception is simple. It is the issuing judge's responsibility to determine whether probable cause exists and, if so, to issue a warrant that complies with the dictates of the Fourth Amendment. Ordinarily, an officer cannot be expected to question or second guess the judge's probable-cause determination or the technical sufficiency of the warrant itself. "[O]nce the warrant issues, there is literally nothing more the [officer] can do in seeking to comply with the law."[9] Penalizing the officer for the judge's errors, rather than the officers, does not deter Fourth Amendment violations.[10]

---

[5]*See United States v. Clay*, 646 F.3d 1124, 1127 (8th Cir. 2011); *United States v. Guzman*, 507 F.3d 681, 685 (8th Cir. 2007).

[6]468 U.S. 897 (1984).

[7]*Id.* at 922.

[8]*United States v. Taylor*, 119 F.3d 625, 629 (8th Cir.) (*citing Leon*, 468 U.S. at 905, 922), *cert. denied*, 522 U.S. 962 (1997); *see also United States v. Gipp*, 147 F.3d 680, 688 (8th Cir. 1998) (applying the *Leon* good-faith exception to a tribal search warrant).

[9]*Leon*, 468 U.S. at 921.

[10]*See id.* at 916, 921.

The *Leon* exception does not exclude evidence when an officer's reliance on a judge-issued warrant is objectively reasonable.[11] Suppression though remains an appropriate remedy if the judge issuing the warrant is misled by information in an affidavit that the affiant knows is false or is made with reckless disregard for the truth.[12] The exception also does not apply in cases where the issuing judge totally abandons her judicial role because in such circumstances, no reasonably well trained officer can rely on the warrant.[13] Nor can an officer manifest objective good faith in relying on a warrant based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."[14] Finally, depending on the circumstances of the case, a warrant may be so facially deficient – because, for example, it failed to particularize the place to be searched or the things to be seized – that the executing officers cannot reasonably presume it to be valid.[15]

None of these disqualifying conditions precedent are present in this case. Nothing Leaf stated in his application and accompanying report contains knowing, intentional or

---

[11]*See id.* at 922-23; *see also Massachussets v. Sheppard*, 468 U.S. 981, 988 (1984); *United States v. Moya*, 690 F.3d 944, 948 (8th Cir. 2012).

[12]*See Leon*, 468 U.S. at 923 (*citing Franks v. Delaware*, 438 U.S. 154 (1978)).

[13]*See Leon*, 468 U.S. at 923 (*citing Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319 (1979)).

[14]*Leon*, 468 U.S. at 923 (*quoting Brown v. Illinois*, 422 U.S. 590, 610-11 (1975) (Powell J., concurring in part)).

[15]*See Leon*, 468 U.S. at 923; *see also Sheppard*, 468 U.S. at 988-91.

reckless falsities. Any assertions to the contrary have no basis in fact and are not legitimized by the record.

There also is no evidence that the tribal judge failed to act in a neutral and detached manner or that she was a mere "rubber stamp" or an "adjunct law enforcement officer."[16] Nor is there evidence to suggest that the judge was somehow involved in the "competitive enterprise of ferreting out crime"[17] or that she blindly approved the search warrant.[18]

Although the legal sufficiency question is a close one – due in large part to staleness and informant reliability problems, conclusory ("investigation revealed") averments, and the seizure of items not named in the search warrant – the Court cannot conclude that the tribal judge issued a warrant that was completely devoid of probable cause and thus could not be reasonably relied on as a basis for searching LaBatte's trailer house and seizing evidence from it. Granted, the judge should have been more demanding of Leaf, made further inquiries of him and required more facts before approving the warrant. But she did

---

[16]*See and compare with Lo-Ji Sales*, 442 U.S. at 326-27; *see also United States v. Martin*, 297 F.3d 1308, 1316-18 (11th Cir.) (discussing judicial abandonment under *Leon*), *cert. denied*, 537 U.S. 1076 (2002).

[17]*See Johnson v. United States*, 333 U.S. 10, 14 (1948).

[18]*See and compare with United States v. Swift*, 720 F.Supp.2d 1048, 1058-59 (E.D. Ark. 2010) (suppressing evidence where a blanket affidavit contained boilerplate language allowing car searches at a house, no probable cause to search cars existed, and the judge signed the warrant "without question or hesitation").

not fail to manifest the neutrality and detachment required of a judicial officer or ratify a warrant application that was bereft of probable cause, perfunctory or "bare bones."[19]

Finally, Leaf's reliance on the search warrant was in good faith and objectively reasonable. He understandably believed that he had a valid warrant, or at least court approved authority to search for and seize evidence germane to the burglaries from LaBatte's residence. He certainly could and should have provided more information in his warrant application. But under the circumstances, a reasonably well-trained officer in his position would not have known that the search was illegal after a judge had authorized it.[20]

It is important to remember that the Constitution protects property owners, not by giving them a license to debate the police over the propriety of a warrant, but by interposing the "deliberate, impartial judgment of a judicial officer . . . between [themselves] and the police"[21] and by providing a right to suppress evidence improperly obtained in a cause of action for damages. LaBatte received the benefit of a judge's impartial evaluation before his property, and that which was under his control, was searched. The search was supported by arguably enough probable cause. Suppression of

---

[19]*See Leon*, 468 U.S. at 915, 923; *see also and compare with Aguilar v. Texas*, 378 U.S. 108, 109 (1964); *Giordenello v. United States*, 357 U.S. 480, 481 (1958); *Nathanson v. United States*, 290 U.S. 41, 44, 46-47 (1933).

[20]*See Leon*, 468 U.S. at 922, n. 23; *see also Moya*, 690 F.3d at 948-49; *United States v. Darr*, 661 F.3d 375, 378-80 (8th Cir. 2011), *cert. denied*, 133 S.Ct. 211 (2012); *United States v. Hudspeth*, 525 F.3d 667, 676 (8th Cir. 2008); *Carpenter*, 341 F.3d at 671-72; *Hallam*, 407 F.3d at 945-47; *Walden v. Carmack*, 156 F.3d 861, 871-72 (8th Cir. 1998); *United States v. Sager*, 743 F.2d 1261, 1266 (8th Cir. 1984), *cert. denied*, 469 U.S. 1217 (1985); *United States v. Farlee*, 2012 WL 6093497 at *9.

[21]*Wong-Sun v. United States*, 371 U.S. 471, 481-82 (1963).

the evidence seized from his home would be a remedy out of proportion to any Fourth Amendment transgression that may have occurred and is uncalled for in this case.[22]

## B. Statements

LaBatte also claims that his Mirandized statements, made on April 23, should be suppressed. He makes two arguments in support of this claim.

## 1. Voluntariness

Labatte first argues that his statements were involuntary under the Fifth Amendment.[23] Specifically, he contends that they were not the product of rational intellect and free will.

A statement is involuntary when it is extracted by threats, violence or express or implied promises sufficient to overbear a suspect's will and to critically impair his capacity for self-determination.[24] Coercive police activity must be shown in order to establish involuntariness.[25]

---

[22]*See Leon*, 468 U.S. at 918-20.

[23]*See Chavez v. Martinez*, 538 U.S. 760, 769 (2003) (Fifth Amendment prohibits the introduction of involuntary statements at trial)

[24]*See United States v. LeBrun*, 363 F.3d 715, 724 (8th Cir. 2004) (*en banc*), *cert. denied*, 543 U.S. 1145 (2005); *Wilson v. Lawrence County*, 260 F.3d 946, 952 (8th Cir. 2001).

[25]*See United States v. Bordeaux*, 400 F.3d 548, 560 (8th Cir. 2005); *United States v. Rohrbach*, 813 F.2d 142, 144 (8th Cir.), *cert. denied*, 482 U.S. 909 (1987).

The determination of whether a statement is voluntary or not is judged by the totality of the circumstances.[26] A reviewing court must focus on the conduct of the officers and the suspect's capacity to resist pressure to confess by looking at such things as the specific interrogation tactics employed, the details of the interrogation and the characteristics of the suspect.[27]

The Court has carefully considered the record evidence now before it with these precepts in mind. In the process, the Court has evaluated the conduct of the officers and LaBatte's ability to resist pressure and inducements brought to bear on him. Considering all of the factors relevant to the voluntariness inquiry, the Court is unable to find that the officers overbore LaBatte's will and capacity for self-determination so as to make his statements involuntary. This is simply not one of those "rare" cases in which the suspect, after being properly advised of his *Miranda* rights and waiving them, failed to make a free and unconstrained choice to speak with officers and incriminate himself.[28]

## 2. "Tainted Fruit"

LaBatte next argues that his statements should be suppressed because they were the "tainted fruit" of a Fourth Amendment violation. The Court's application of the *Leon* good-

---

[26]*See LeBrun*, 363 F.3d at 724; *see also United States v. Braveheart*, 397 F.3d 1035, 1040 (8th Cir. 2005) (whether a defendant's will has been overborne is determined by examining the totality of the circumstances).

[27]*See id.* at 726; *United States v. Medearis*, 775 F.Supp.2d 1110, 1125 (D.S.D. 2011).

[28]*See Dickerson v. United States*, 530 U.S. 428, 444 (2000).

faith exception to the Exclusionary Rule, however, forecloses this argument and the need for any analysis of it.[29]

## CONCLUSION

The search conducted at LaBatte's home and the seizure of evidence from it were based on an objectively reasonable (good faith) belief that the warrant, a judge found probable cause to issue, was valid. And LaBatte's custodial statements, given after waiving his *Miranda* rights, were neither involuntary nor the poisonous fruit of an earlier – supposedly illegal – search and seizure. This being the case, LaBatte cannot succeed on his motion, and suppress from use at trial, the items and statements officers garnered from him.

## RECOMMENDATION

Accordingly, it is hereby

RECOMMENDED that LaBatte's Motion to Suppress Evidence and Statements[30] be denied in its entirety.

---

[29]*See United States v. Hessman*, 369 F.3d 1016, 1023-24 (8th Cir. 2004), *cert. denied*, 543 U.S. 1072 (2005); *see also United States v. Hughes*, 127 F.3d 1132, 1133 (8th Cir. 1997) (applying *Leon* and finding no basis upon which to reverse the district court's decision to deny the defendant's motion to suppress statements), *cert. denied*, 523 U.S. 1013 (1998).

[30]*See* Dkt. No. 37.

## NOTICE

An aggrieved party must file written objections, within 14 calendar days, to challenge this Report and Recommendation before the assigned United States District Judge.[31]

Dated this 25ᵗʰ day of March, 2013, at Pierre, South Dakota.

BY THE COURT:

_____
MARK A. MORENO
UNITED STATES MAGISTRATE JUDGE

---

[31] *See* 28 U.S.C. §636(b)(1).