

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | CR 12-30158-01-RAL |
| | * | |
| Plaintiff, | * | |
| | * | OPINION AND ORDER |
| vs. | * | DENYING MOTION TO |
| | * | SUPPRESS AND ADOPTING |
| PHILLIP LaBATTE, | * | REPORT AND |
| | * | RECOMMENDATION |
| Defendant. | * | |
| | * | |

Defendant Phillip LaBatte was charged in an indictment with distribution of a controlled substance to a person under the age of 21 and possession with intent to distribute a controlled substance and aiding and abetting in violation of 21 U.S.C. § 841(a)(1), 21 U.S.C. § 859(a), and 18 U.S.C. § 2. Doc. 1. LaBatte filed a motion to suppress evidence and statements. Doc. 37.

Magistrate Judge Mark A. Moreno held a hearing on the motion to suppress on February 28, 2013. T.[1] 1. Judge Moreno heard testimony from Cheyenne River Sioux Tribe Police Department Detective Russell Leaf, Cheyenne River Sioux Tribe Law Enforcement Officer Nicholas Cottier, and South Dakota Highway Patrol Trooper Shane Severyn. T. 5, 84, 91. Judge Moreno received eleven exhibits into evidence. T. 2. On March 25, 2013, Judge Moreno issued a Report and Recommendation that Defendant's suppression motion be denied. Doc. 49. The Report and Recommendation was served upon the parties as required by 28 U.S.C. § 636, and Defendant timely objected. Doc 52. In considering a magistrate judge's recommendation on a motion to suppress evidence, a district court must make a "de novo determination of those portions of the report or . . . recommendations to which objection is made." 28 U.S.C. § 636(b)(1). This Court has conducted

[1]Any references to the suppression hearing transcript will be "T" followed by the page number or numbers.

a de novo review of the record. For the reasons explained below, this Court adopts the Report and Recommendation.

## I. FACTS

In December 2011, Russell Leaf, employed as a detective with the Cheyenne River Sioux Tribe Police Department, began investigating a string of burglaries. T. 5, 6. Detective Leaf received and read the police reports from three burglaries and spoke with the victims. T. 7. Detective Leaf identified certain juveniles as suspects in the burglaries and spoke with five juveniles between December 21, 2011, and December 23, 2011. T. 17-18, 65. The juveniles provided information, including saying that they sold some of the stolen property to LaBatte for money and marijuana. T. 18; Exh. 4. The juveniles claimed that they brought some of the stolen property to LaBatte at both a brown home and a white trailer home. T. 62.

LaBatte bought a white FEMA trailer home on December 21, 2011, which was after the burglaries occurred and after stolen property allegedly was sold to LaBatte. T. 62. Detective Leaf took photos of LaBatte's white trailer home to ensure that he had the home properly identified. T. 20, 24; Exh. 4. Keshia Buffalo, who had previously owned the home, identified to Detective Leaf the home in the photo as belonging to LaBatte. T. 20-21. Detective Leaf contacted the tribal clerk on December 23, 2011, to determine who owned the trailer at issue. T. 38. The tribal clerk provided Detective Leaf with a copy of a water bill that listed Keshia Buffalo as the owner; however, the tribal clerk wrote on the back of the water bill that Keshia Buffalo sold the home to LaBatte on December 21, 2011. Detective Leaf is unsure of whether he provided the water bill and the information regarding when LaBatte became an owner of the trailer to the tribal judge when he sought the warrant. T. 39.

Detective Leaf received no new information between December, 2011, and March 16, 2012, when he applied for the search warrant for LaBatte's white trailer house. T. 21-22. 78; Exh. 4. Detective Leaf did not specifically identify any of the stolen property in his application for a search warrant, but listed certain categories of allegedly stolen property and illegal drugs and drug paraphernalia. T. 70. Judge Karen Jeffries of the Cheyenne River Tribal Court issued a search warrant to Detective Leaf that same day. T. 25; Exh. 4. Detective Leaf went to search LaBatte's white trailer house on the afternoon of March 16, 2012. T. 25-26. April Pretends Eagle was in the home when Detective Leaf arrived, but LaBatte was not present. T. 28. Detective Leaf was joined at the home by Sergeant Don Farlee, Officer Nick Cottier, and Detective Larry LeBeau, and the four officers searched the trailer. T. 26, 30. The officers seized property from the trailer, including property–such as power tools–not listed in the search warrant. T. 71; Exh. 7. Officer Cottier found a brick of marijuana inside of a drawstring bag. T. 86.

Detective Leaf also sought and received an arrest warrant for LaBatte on March 16, 2012. T. 41; Exh. 9. Detective Leaf and South Dakota Highway Patrol Agent Shane Severyn, who is an officer in the drug task force, interviewed LaBatte on April 23, 2012, while he was in custody based on charges stemming from the seizing of evidence from his home on March 16, 2012. T. 43-44, 48, 53, 92. Detective Leaf read LaBatte his Miranda rights. T. 45-47; Exh. 10; Miranda v. Arizona, 384 U.S. 436 (1966). LaBatte neither asked for an attorney during the interview nor requested that the interview terminate. T. 52, 97. The interview lasted between forty-five minutes and two hours and took place at the police department. T. 49, 55, 97. For a portion of that time, Detective Leaf was out of the room and Agent Severyn continued the interview alone. T. 51. Detective Leaf did not attempt to record the interview; Agent Severyn did record the interview, but that recording was

accidentally erased, T. 56-57, 98, and only Agent Severyn wrote a report about the interview.

## II. DISCUSSION

LaBatte makes two specific objections to the Report and Recommendation: (1) that the search warrant was not valid because the application for search warrant did not establish probable cause, the warrant lacked particularly, and the good-faith exception does not save the validity of the warrant; and (2) that Defendant's statements were not voluntary under the Fifth Amendment.

### A. Search Warrant

The Warrant Clause of the Fourth Amendment requires that warrants (1) be issued by a neutral and detached judge; (2) contain a particular description of "the place to be searched, and the persons or things to be seized;" and (3) be based "upon probable cause, supported by Oath or affirmation." Dalia v. United States, 441 U.S. 238, 255 (1979); see also U.S. Const amend. IV.

LaBatte initially argues that the third requirement for a valid warrant—probable cause based on an affirmation—was not met. "Probable cause exists, if under the totality of the circumstances, a showing of facts can be made sufficient to create a fair probability that evidence of a crime will be found in the place to be searched." United States v. Wallace, 550 F.3d 729, 732 (8th Cir. 2008) (citations and internal quotation marks omitted). When evaluating whether probable cause supported the issuance of a warrant, a court is to assess the "totality-of-the-circumstances" including the "'veracity' and 'basis of knowledge' of persons supplying hearsay information." Illinois v. Gates, 462 U.S. 213, 238 (1983). A reviewing court "is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed." Id. at 238-39 (quoting Jones v. United States, 362 U.S. 257, 271 (1960)). A court's review should be "flexible" and not "hypertechnical," but the affidavit "must provide the magistrate with a substantial basis for

determining the existence of probable cause." Id. at 236, 239. If the existence of probable cause is difficult to determine, "the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." United States v. Ventresca, 380 U.S. 102, 109 (1965). Once a magistrate has determined that probable cause exists, that determination should be given "great deference." Gates, 462 U.S. at 236.

LaBatte argues that the March 16, 2012 warrant was not supported by probable cause. Doc. 38. Detective Leaf filed an application for a search warrant, with an attached affidavit. Exh. 4 at 2. The affidavit itself read merely "[s]ee attached statement and pictures." Exh. 4 at 3. To the affidavit were attached a letter from Detective Leaf outlining his investigation, Exh. 4 at 4-6, and photos of LaBatte's trailer home used to identify the specific trailer to be searched, Exh. 5 at 7-10. Detective Leaf is not sure whether he presented any information to the tribal judge that would have provided a link between the trailer in the photos and LaBatte. In his Report and Recommendation, Judge Moreno did not analyze whether the search warrant comported with the Fourth Amendment requirements, but rather determined that the evidence need not be suppressed because of the applicability of the good-faith exception to the Fourth Amendment warrant requirement as set forth by United States v. Leon, 468 U.S. 897 (1984), and its progeny. Doc. 49 at 2. LaBatte objected to this conclusion. Doc. 52.

LaBatte also argues that the March 16, 2012 application and warrant lacked particularity. Doc. 38 at 3. A warrant satisfies the particularity requirement when "the place to be searched [is] described with sufficient particularity as to enable the executing officer to locate and identify the premises with reasonable effort and to avoid mistakenly searching the wrong premises." United States v. Gamboa, 439 F.3d 796, 806 (8th Cir. 2006) (internal quotation marks omitted). "By

limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." Maryland v. Garrison, 480 U.S. 79, 84 (1987); see also United States v. Hibbard, 963 F.2d 1100, 1102 (8th Cir. 1992) ("The purpose of the particularity requirement is to prevent a general exploratory rummaging through a person's belongings."); United States v. Blaylock, 535 F.3d 922, 927 (8th Cir. 2008) (holding that a warrant "need not name any particular defendant against whom evidence will be used in order to be valid; it must only particularly describe the place to be searched, and the persons or things to be seized") (internal quotation marks omitted). The degree of specificity in a description that is required depends on the circumstances of the case and the types of items involved. United States v. Tyler, 238 F.3d 1036, 1039 (8th Cir. 2001).

LaBatte has a point that Detective Leaf's application did not identify the FEMA trailer in the photos as belonging to LaBatte. See T. at 81-82. Yet the tribal judge must have inferred the connection between LaBatte and the photos of the white trailer, if Detective Leaf did not tell her of the connection, in agreeing to issue the warrant. Detective Leaf testified that he likely informed the tribal judge about the connection between LaBatte and the identified FEMA trailer at the time the warrant was signed. Detective Leaf provided no specific descriptions of the stolen property and explained that he "tr[ies] to generalize as much as [he] can" when describing the property in a search warrant. T. 34. Judge Moreno did not analyze whether the application and warrant were sufficiently particularized because he concluded that the Leon good faith exception applied.

Although there are shortcomings in the application for search warrant here with regard to probable cause and particularity, the evidence need not be suppressed in light of the good-faith

exception. When violations of the warrant requirement occur, the Exclusionary Rule operates as "a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved." Leon, 468 U.S. at 906. In Leon, the Supreme Court articulated a good-faith exception to the Exclusionary Rule. Id. at 920-21. Under the exception, the Exclusionary Rule is not to "be applied to exclude the use of evidence obtained by officers acting in reasonable reliance on a detached and neutral magistrate judge's determination of probable cause in the issuance of a search warrant that is ultimately found to be invalid." United States v. Taylor, 119 F.3d 625, 629 (8th Cir. 1997) (citing Leon, 468 U.S. at 905, 922); see also United States v. Gipp, 147 F.3d 680, 688 (8th Cir. 1998) (applying the Leon good-faith exception to a tribal search warrant). The Supreme Court explained the rationale behind the good-faith exception in this manner:

> It is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment. In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient. Once the warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law. Penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations.

Leon, 468 U.S. at 921 (internal quotation marks and citation omitted).

"The exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates." Id. at 916. "[S]uppression of evidence obtained pursuant to a warrant

should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." United States v. Hessman, 369 F.3d 1016, 1021 (8th Cir. 2004) (citing Leon, 468 U.S. at 918). The good-faith exception does not exclude evidence when an officer's reliance on a warrant issued by a judge or magistrate is objectively reasonable. Leon, 468 U.S. at 922. An officer's reliance is not objectively reasonable and the good-faith exception does not apply in four circumstances: (1) when the issuing judge is misled by information that is false or made in reckless disregard for the truth; (2) when the issuing judge completely abandons the judicial role; (3) when the information provided to the judge includes so little indicia of probable cause that the officer's belief in its existence is entirely unreasonable; and (4) when the warrant is so facially deficient, i.e., in failing to particularize the place to be searched or the things to be seized, that the executing officer cannot reasonably presume it to be valid. Id. at 923; see also Hessman, 369 F.3d at 1020 (noting these four situations).

LaBatte asserts that the good faith exception does not apply because Detective Leaf prepared a search warrant affidavit that was so lacking in probable cause, that it was unreasonable for him to rely upon the search warrant that was issued under the third exception to Leon. Under the third circumstance listed in Leon for refusal to apply the good-faith exception, "[e]vidence should be suppressed only if the affiant-officer could not have harbored an objectively reasonable belief in the existence of probable cause." United States v. Gibson, 928 F.2d 250, 254 (8th Cir. 1991) (citing Leon, 468 U.S. at 921-23). The Leon inquiry "is confined to the objectively ascertainable question

whether a reasonably well trained officer would have known that the search was illegal" in light of all of the circumstances. Leon, 468 U.S. at 922, n.23. This rule was not fashioned to provide incentives for detectives to write better search warrants, but "to deter unlawful police conduct" by suppressing evidence gained from a search the officer knew to be unconstitutional. Id. at 918-19.

In this case, Detective Leaf based his affidavit and accompanying attachments on information relayed to him by juveniles who were interviewed three months prior. Detective Leaf had begun the investigation and had information to reasonably suspect that there was contraband in LaBatte's FEMA trailer. Detective Leaf could and should have provided more facts in his affidavit seeking the search warrants, including specific information about the particular stolen goods allegedly sold to LaBatte and proof that LaBatte owned the trailer. But under the circumstances, Detective Leaf had an objectively reasonable belief in the existence of probable cause that there was evidence of a crime in LaBatte's trailer and that the search warrants should have been issued. Likewise, although the warrant application did not specifically identify the white trailer in the photographs as belonging to LaBatte, the tribal judge could infer, or may have been told by Detective Leaf, of the connection. The search warrant thus was not so "facially deficient" that the tribal judge could not presume it to be valid. Leon, 468 U.S. at 923.

LaBatte next argues that the search warrant issued was based on information that was too old to support a finding of probable cause. His staleness argument is based on the three-month gap in time between the December of 2011 interviews and Detective Leaf's application for the warrant in

March of 2012. Under the Fourth Amendment, the probable cause necessary to validate a search warrant must exist when the warrant is issued, not at some earlier time. Sgro v. United States, 287 U.S. 206, 210-11 (1932). A delay in seeking or obtaining a search warrant may invalidate the warrant. While the lapse of time involved is an important consideration, it is not controlling. United States v. Steeves, 525 F.2d 33, 38 (8th Cir. 1975). The time factors must be examined in the context of the specific case including the character of the crime, the things to be seized, and the place to be searched. See United States v. Perry, 531 F.3d 662, 662 (8th Cir. 2008); United States v. Summage, 481 F.3d 1075, 1078 (8th Cir. 2007); Steeves, 525 F.2d at 38; see generally 2 LaFave, Search and Seizure, § 3.7(a). Staleness is therefore a function of the circumstances present, and not a firm rule that involves counting the number of days between the occurrence of the facts supplied and the preparation and submission of the warrant affidavit. United States v. Darr, 661 F.3d 375, 378 (8th Cir. 2011). The allegedly stolen items sought through the warrant were transportable, and Detective Leaf had received no information since late December of 2011 to indicate where those items might have been. Yet Detective Leaf, in his application for search warrant, provided information that tended to show a pattern of criminal conduct, which meant that the application contained the requisite "fair probability" that evidence of the type and character Detective Leaf sought would still be in LaBatte's trailer. United States v. LaMorie, 100 F.3d 547, 554-55 (8th Cir. 1996).

LaBatte also argues that the tribal judge merely "rubber stamped" an inadequate search

warrant and thus the second exception in Leon applies. Under the second exception in Leon, the issuing judge abandons her judicial role when she serves as a mere "rubber stamp" or an "adjunct law enforcement officer." Leon, 468 U.S. at 914. The Fourth Amendment's warrant requirement ensures that there is a neutral and detached magistrate who makes a probable cause determination and stands between the citizens and the officers who are "engaged in the often competitive enterprise of ferreting out crime." Johnson v. United States, 333 U.S. 10, 14 (1948). For example, one way an issuing judge acts as a rubber stamp is when the affidavit lacks probable cause and the judge issues the warrant without question or hesitation. See United States v. Swift, 720 F. Supp. 2d 1048, 1058-59 (E.D. Ark. 2010) (suppressing evidence when a blanket affidavit contained boilerplate language allowing car searches at a house, no probable cause to search cars existed, and the judge signed the warrant "without question or hesitation").

Here, the issuing judge signed the warrant after she read the affidavit submitted by Detective Leaf. Although the terse and conclusory nature of the affidavit makes a determination of probable cause tenuous, this Court cannot conclude that the tribal judge abandoned her judicial role. The issuing judge should have been more demanding of Detective Leaf, inquired into the basis for the conclusory assertions in the affidavits and required more facts before issuing the warrant. But the issuing judge did not abandon her judicial role by approving the warrant under the circumstances of this case. See United States v. Farlee, No. 12-30051-RAL, 2012 WL 6093497 at *9 (D.S.D. Dec. 7, 2012); cf. Swift, 720 F.Supp.2d at 1058-59.

Thus, this is not one of those "unusual cases in which exclusion will further the purposes of the exclusionary rule" because the judge did not completely abandon her judicial role and the search was not objectively unconstitutional. Leon, 468 U.S. at 918. This Court adopts Judge Moreno's Report and Recommendation in refusing to suppress the physical evidence because the good faith exception to the warrant requirement applies.

**B. LaBatte's Statements**

LaBatte argues that his statements to Detective Leaf and Agent Severyn made on April 23, 2012, should be suppressed because the statements were not voluntary and were the "fruit of the poisonous tree" because of a constitutionally flawed search warrant. Doc. 38 at 5. Judge Moreno found that the statements were voluntary and that there was no "fruit of the poisonous tree" issue. Doc. 49 at 8-10.

**1. Voluntariness**

The Fourth Amendment prohibits unreasonable searches and seizures. U.S. Const. amend. IV. A "cardinal principle" in Fourth Amendment search and seizure jurisprudence is that searches conducted outside the judicial process—that is, without prior approval by a judge—are per se unreasonable, "subject only to a few specifically established and well-delineated exceptions." Mincey v. Arizona, 437 U.S. 385, 390 (1978) (internal quotation marks omitted). The Fifth Amendment to the United States Constitution affords criminal suspects the right to be free from compulsory self-incrimination. Criminal suspects must have knowledge of their Fifth Amendment

rights "before they can either intelligently exercise or waive these important privileges." United States v. Griffin, 922 F.2d 1343, 1356 (8th Cir. 1990); United States v. Running, 698 F. Supp. 2d 1186, 1191 (D.S.D. 2009). The United States Supreme Court held in Miranda that any time a person is taken into custody for questioning they must be advised of their Fifth Amendment rights in order "to counteract the 'inherently compelling pressures' of custodial interrogation." Arizona v. Roberson, 486 U.S. 675, 681 (1988) (quoting Miranda, 384 U.S. at 467). The safeguards of Miranda "'assure that [a suspect's] *right to choose* between speech and silence remains unfettered throughout the interrogation process.'" Connecticut v. Barrett, 479 U.S. 523, 528 (1987) (quoting Miranda, 384 U.S. at 469) (emphasis in original). The suspect has the right to "control the time at which questioning occurs, the subjects discussed, and the duration of the interrogation." Michigan v. Mosley, 423 U.S. 96, 103-04 (1975).

Miranda "requires that a warning as to the availability of the privilege against self-incrimination and to the assistance of counsel be issued *prior to questioning* whenever a suspect is (1) interrogated (2) while in custody." Griffin, 922 F.2d at 1347 (emphasis in original); see also United States v. Head, 407 F.3d 925, 928 (8th Cir. 2005) ("The requirements of Miranda are triggered only when a defendant is both in custody and being interrogated."). The government has the burden to prove that a defendant's waiver of his Miranda rights was voluntary, knowing, and intelligent. Tague v. Louisiana, 444 U.S. 469, 470 (1980); North Carolina v. Butler, 441 U.S. 369, 372-73 (1979); Miranda, 384 U.S. at 475. "If the interrogation continues without the presence of

an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." Miranda, 384 U.S. at 475. However, the government "need prove waiver only by a preponderance of the evidence." Colorado v. Connelly, 479 U.S. 157, 168 (1986).

A waiver of Miranda rights may be either express or implied. Berghuis v. Thompkins, 130 S. Ct. 2250, 2261 (2010). An implied waiver occurs when the suspect embarks on a course of conduct indicating, given the totality of circumstances, waiver. Id. at 2261-62. The government must show that the suspect was advised of his Miranda rights, understood those rights, and then chose to make an uncoerced statement. Id. Simply proving that a Miranda advisement was given and that a statement was later made is not sufficient. Id.

Whether LaBatte effectively waived his Miranda rights involves the following two inquiries:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.

United States v. Jones, 23 F.3d 1307, 1313 (8th Cir. 1994) (quoting Moran v. Burbine, 475 U.S. 412, 421 (1986)). "Only if the 'totality of circumstances surrounding the interrogation' reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived." Id. (quoting Moran, 475 U.S. at 421). Examination of the

totality of circumstances includes, but is not limited to, such considerations as the "background, experience, and conduct" of the defendant. Id. at 1313 (quoting United States v. Barahona, 990 F.2d 412, 418 (8th Cir.1993)).

LaBatte argues that his statements on April 23, 2012, were not voluntary because the officers overbore LaBatte's will and capacity for self-determination so as to make his statements involuntary and because LaBatte did not make a free and unconstrained choice to speak with the officers. Doc. 52. Detective Leaf read LaBatte his Miranda rights and Agent Severyn recorded the interrogation. However, Agent Severyn later accidentally deleted the recording of the interrogation. Because the recording was deleted, this Court does not have the benefit of a tape-recording to help determine whether LaBatte's statements were voluntary.

Judge Moreno listened to testimony and considered the conduct of the officers and LaBatte's ability to resist pressure and inducements brought to bear on him. LaBatte was properly read his Miranda rights and was interrogated by two officers for up to two hours. Detective Leaf left the room at one point, supposedly at the request of LaBatte, and Agent Severyn continued the interrogation alone. Detective Leaf testified that no threats were made toward LaBatte during the April 23, 2012 interview. T. 50, 55. After considering the evidence and testimony, Judge Moreno did not find that the officers overbore LaBatte's will and capacity for self-determination so as to make his statements involuntary. Doc. 49 at 9. "The magistrate's finding that the officer's testimony was believable is deserving of deference." United States v. Lockett, 393 F.3d 834, 837-38 (8th Cir.

2005). A de novo review of the record reveals that the government has met its burden to show that LaBatte's statements did not violate the Miranda protection.

### 2. Fruit of the Poisonous Tree

LaBatte also moved to suppress his April 23, 2012 statements on the grounds that they were the fruit of an illegal warrant, contending under Wong Sun v. United States, 371 U.S. 471 (1963), that illegality flowing from the warrant tainted, thereby rendering inadmissible, the April 23, 2012 statement. Because the search warrant did not violate the Fourth Amendment, the search was not a poisonous tree from which any poisonous fruit could fall. Hessman, 369 F.3d at 1023-24.

## III. CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that Defendant's Motion to Suppress, Doc. 37, is denied. It is further

ORDERED that Defendant's Objections, Doc. 52, to the Report and Recommendation are overruled. It is further

ORDERED that the Report and Recommendation, Doc. 49, is adopted.

Dated May 23, 2013.

BY THE COURT:

ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE